UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LYDIA ROSARIO and AUDRA PHILLIPS, on
behalf of themselves and all others
similarly situated,

              Plaintiff,

vs.   Case No. 2:01-cv-221-FtM-29DNF

AMERICAN CORRECTIVE COUNSELING
SERVICES, INC., DON R. MEALING,
KELLY KEAHEY, JOSEPH AYALA, and
DENISE NIELSON,[1]

              Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. #153) and Plaintiffs' Motion for Summary Judgment (Doc. #157). Both motions were supported by memoranda of law (Docs. #154, 159), and Responses (Docs. #177, 189) were filed to each.

**I.**

     Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a

---

[1]The original defendants, R.D. Davis, Mr. Steele, and Mrs. Jones were aliases for actual names. The caption of the case has been corrected to reflect the actual names of the defendants.

verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995).

## II.

Each plaintiff wrote a bad check, received letters from 20th Judicial Circuit State Attorney's Office ("SAO"), and was offered

the opportunity to participate in the SAO's "Bad Check Restitution Program" (the "bad check program"). The bad check program is a misdemeanor pretrial diversion program. Plaintiffs claim defendants, as independent contractors operating the SAO's bad check program, implemented collection policies in violation of the federal Fair Debt Collection Practices Act (FDCPA) and Florida Consumer Collection Practices Act (FCCPA). Plaintiffs seek declaratory relief, actual damages, statutory damages, and costs and attorney fees.

More specifically, Ms. Rosario wrote a non-sufficient funds check numbered 241 in the amount of $1,526.40 to Eddies Auto Repair, then stopped payment. American Corrective Counseling Services, Inc., acting through its defendant employees (collectively ACCS) prepared and sent a letter dated December 22, 1999, captioned "Official Notice," from the SAO's bad check program to Ms. Rosario regarding dishonored check #241. (Doc. #39, Exh. C.) The Official Notice stated Ms. Rosario's total balance due was $1,720.70, including statutory and program fees. The Official Notice gave Ms. Rosario thirty days in which to acknowledge the notice and take advantage of the opportunity to participate in the bad check program in order to avoid criminal prosecution. Ms. Rosario received a total ten letters from the bad check program.[2]

---

[2] In chronological order these letters were dated December 22, 1999; January 3, 2000; January 20, 2000; February 9, 2000; February 23, 2000; March 9, 2000; March 23, 2000; June 5, 2000; November 20,
(continued...)

Ms. Rosario paid the amount she allegedly owed ACCS. (Doc. #39, p. 10.)

Ms. Phillips issued a dishonored check in the amount of $9.62. A June 5, 2000, Official Notice sent by ACCS on behalf of the SAO stated Ms. Phillips' total balance due was $134.62, including statutory and program fees, and gave her thirty days in which to acknowledge the notice and take advantage of the opportunity to participate in the bad check program and avoid criminal prosecution. Ms. Phillips received approximately five letters from the bad check program[3]. Ms. Phillips did not participate in the program, but paid the victim directly.

## III.

Defendant ACCS first asserts it is entitled to Eleventh Amendment immunity because it is an agent or instrumentality of the State Attorney's Office, which is an arm of the State of Florida. The Court agrees.

## A.

The Eleventh Amendment precludes most suits in federal court by citizens against their own or other States. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Seminole

---

[2](...continued)
2000 and were attached to the Amended Complaint as Exhibits C-K.

[3] In chronological order these letters were dated June 5, 2000; November 20, 2000; April 4, 2001; May 7, 2001; May 31, 2001; August 15, 2001; August 29, 2001 and were attached to the Amended Complaint as Exhibits L-P.

Tribe of Florida v. Florida, 517 U.S. 44, 67 (1996). This immunity extends to both legal and equitable suits, Badilo v. Thrope, 158 Fed. Appx. 208, 212 n.6 (11th Cir. 2005), with the exception of suits against state officers which seek prospective relief to end continuing violations of federal law pursuant to Ex parte Young, 209 U.S. 123 (1908). Frew v. Hawkins, 540 U.S. 431, 437 (2004); Florida Assn. Of Rehab. v. Fla. Dept. Of Health, 225 F.3d 1208, 1219-23 (11th Cir. 2000). The immunity also extends to state law claims in federal court pursuant to supplemental jurisdiction. Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir. 2005).

Eleventh Amendment immunity extends only to States and arms of the State, not to a county or other unit of government. Northern Ins. Co. Of New York v. Chatham County, Ga, 126 S.Ct. 1689, 1693 (2006); Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003)(en banc), cert. denied, 540 U.S. 1107 (2004). Whether the entity qualifies as an "arm of the state" "must be assessed in light of the particular function in which the entity was engaged when taking the action out of which liability is asserted to arise." Abusaid v. Hillsborough County Bd. Of Comm., 405 F.3d 1298, 1303 (11th Cir. 2005)(quoting Manders, 338 F.3d at 1308). The question is not whether the entity acts for the state in a categorical, all or nothing manner, but whether the entity is acting for the state in a particular area or on a particular issue. Abusaid, 405 F.3d at 1303 (quoting McMillian v. Monroe County, 520 U.S. 781, 785 (1997)). Whether an entity is an "arm of the State" for Eleventh

Amendment purposes when engaged in the relevant function turns on consideration of four factors: (1) how the state defines the entity, (2) what degree of control the state maintains over the entity, (3) where the entity derives its funds, and (4) who is responsible for judgments against the entity. Manders, 338 F.3d at 1309. While state law is considered, the issue of whether an entity is an arm of the state is a question of federal law. Id.; Williams v. Dist. Bd. Of Trs. of Edison Cmty Coll., Fla., 421 F.3d 1190, 1192 (11th Cir. 2005).

The Eleventh Amendment protection of an "arm of the state" also bars suits against defendants acting as agents or instrumentalities of the State, even if not labeled a "state officer" or "state official." Manders, 338 F.3d at 1308; Williams, 421 F.3d at 1192. Additionally, Eleventh Amendment immunity may extend to those who contract with a State or an arm of the State. Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000). It is not necessary that the State be named as a party of record in order for Eleventh Amendment immunity to apply. Schopler v. Bliss, 903 F.2d 1373, 1378 (11th Cir. 1990).

**B.**

The initial inquiry is whether the State Attorney's Office acts as an arm of the state when it implements and operates the bad check program. If so, the next issue is whether ACCS can assert Eleventh Amendment immunity as an agent, instrumentality, or contractor of the SAO.

**(1) State Attorney's Office**

ACCS asserts that the State Attorney's Office is an arm of the state of Florida; plaintiff does not address or dispute this contention, but focuses on ACCS. The Court has found only one Eleventh Circuit case in which a Florida State Attorney's Office asserted it was entitled to Eleventh Amendment immunity. In <u>Long v. Satz</u>, 181 F.3d 1275 (11th Cir. 1999), the State Attorney, two of his assistants, and one of his investigators were sued under § 1983 for allegedly failing to disclose exculpatory evidence. The Eleventh Circuit stated in a footnote: "The defendants also contend that this suit is barred by the 11th Amendment and that they are entitled to qualified immunity; we reject the 11th Amendment argument, and do not reach the question of qualified immunity." <u>Id.</u> at 1278 n.3. <u>Long</u>, however, was resolved on traditional prosecutorial immunity principles, and therefore the Court's footnote concerning the Eleventh Amendment is *dicta*. Additionally, this case was decided prior to the function-by-function determination mandated by <u>McMillian</u> and <u>Manders</u>. On a prior occasion, <u>Farrell v. Woodham</u>, 2:01-cv-417-FTM-29DNF, 2002 WL 32107645, *2-3 (M.D. Fla. May 29, 2002), the undersigned concluded that the SAO is an arm of the state of Florida for Eleventh Amendment purposes. For the reasons stated in <u>Farrell</u>, the Court continues to find that the SAO is generally an arm of the state. The more specific question is whether the SAO is an arm of the

state when it implements and operates the Florida bad check program. No binding authority has been cited, and the Court has found none, as to the precise issue before the Court.

The Court concludes that the SAO is an arm of the State when implementing and operating the bad check program. The program was created by state statute, Fla. Stat. § 832.08. The state sets forth the factors the SAO must consider to determine whether a case is appropriate for diversion, Fla. Stat. § 832.08(2), requires a notice to defendant and sets forth the contents of the notice, Fla. Stat. § 832.08(3), and requires a written agreement with a defendant and specifies the conditions which must be included in the agreement. Fla. Stat. § 832.08(4). The statute allows a collection of a fee, but places a cap on the amount. Fla. Stat. § 832.08(5).

**(2) ACCS Entitlement to Eleventh Amendment Immunity**

While plaintiffs have not disputed the SAO's entitlement to Eleventh Amendment immunity, they strenuously argues that ACCS is not entitled to such immunity. Plaintiffs focus on the facts that ACCS is a private corporation not controlled by the State of Florida, acts pursuant to a contract with the SAO, is not controlled by the SAO, does not derive income from the State of Florida, and will itself be responsible for any judgment entered.

ACCS relies largely upon Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000). Shands stated: "The pertinent inquiry is not into the nature of a

-8-

corporation's status in the abstract, but its function or role in a particular context. Thus, the question in this case is whether and to what extent these corporations are contractually acting as representatives of the State." Shands, 208 F.3d at 1311. In Shands, the Court found that the corporations at issue were "simply administrators acting at the behest of the State with reference to Florida's health insurance program," which was funded through annual legislative appropriations and over which the state retained virtual complete control of the administrators actions. Id. Shands concluded that the corporations were entitled to Eleventh Amendment immunity "when they are clearly acting as agents of the state," but "only to the extent that a judgment would expose the government to financial liability or interfere with the administration of government programs." Id. Shands found that the dispositive question was "whether a judgment against [the corporations] would implicate the state treasury or interfere with the administration of the state group insurance program, or whether the claims constitute a private cause of action arising out of tort or contract, for which [the corporations] would be financially responsible." Id. at 1311-12. Finding the claims were in substance claims against the state, Shands found the corporations were entitled to immunity even though they had agreed to indemnify the government.

The Court finds that the claims in this case against ACCS are in substance claims against the SAO, and that ACCS was clearly

-9-

acting as an agent of the SAO in connection with the events which are the basis for the claims.  The 1996 Florida statute which created the bad check program specifically authorized the SAOs to establish such a program through independent contractors.  Fla. Stat. § 832.08(1).  On November 18, 1998, the SAO contracted with ACCS to establish and operate the bad check program.  (Doc. #39, Exh. B.)  The bad check program is "operated by ACCS on behalf of the State Attorney," and provides "administrative support to the State Attorney" (Id. at ¶ 2).  Under the contract, ACCS is required, among other things, to provide daily management of all clerical and accounting functions related to the bad check program, including generation of the SAO demand notices, collection and disbursement of victim restitution and administrative revenue, and all financial reporting (Id. at ¶5A), and maintain all physical files, financial records, documentation, reports, and computer files (Id. at ¶5C.)  The SAO is required to "assist and direct ACCS with the planning and development of policies, procedures, reports, audits, and other [necessary] functions," and to designate a staff member to serve as a liaison with ACCS in organizing and implementing the bad check program. (Id. at ¶5A(second).)  The SAO is the sole intake source of all bad check complaints, which ACCS is required to process.  (Id. at ¶5B(second).)  The SAO is required to assign an assistant prosecutor or investigator to perform a timely review of all bad check cases submitted by ACCS that fall within the bad check program process or meet established criteria.

(Id. at ¶5C(second).)  If a participant in the bad check program fails to comply with the program's terms, ACCS prepares and submits all records associated with the complaint to the SAO to determine prosecution eligibility.  (Id. at ¶8.)  ACCS is required to maintain thorough records for the preparation of regular reports, and the reports become the property of the SAO.  (Id. at ¶10A.)  At the SAO's request, ACCS is required to submit an annual financial statement.  (Id. at ¶10C.)  ACCS was an independent contractor and has no authority to bind the SAO to any agreement, settlement, liability or understanding.  (Id. at ¶16.)  ACCS agreed to indemnify and defend the SAO as to all claims and losses as a result of its work.  (Id. at ¶17.)[4]

Accordingly, it is now

**ORDERED**:

1.  The caption of the case shall be corrected to replace the original defendants, R.D. Davis, Mr. Steele, and Mrs. Jones with Kelly Keahey, Joseph Ayala, and Denise Nielson.

2.  Defendant's Motion for Summary Judgment (Doc. #153) is **GRANTED** as to the Eleventh Amendment issue.  Because the Court lacks jurisdiction, the case will be dismissed without prejudice.

---

[4]The fact that the SAO is indemnified by ACCS does not divest it of Eleventh Amendment immunity. Regents of the Univ. Of Cal. v. Doe, 519 U.S. 425, 431 (1997)("The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party."); Shands, 208 F.3d at 1313.

3.  Plaintiffs' Motion for Summary Judgment (Doc. #157) is **DENIED** as moot.

3.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of November, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record
DCCD